UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID L. H.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 3:22-CV-5393-DWC

ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING BENFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Disability Insurance Benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

After considering the record, the Court finds no reversable error.

**I. BACKGROUND**

On November 20, 2017 Plaintiff protectively filed an application for Disability Insurance Benefits alleging an onset date of January 20, 2015 due to chronic pain in the back, knee, and shoulder, loss of function in the right thumb, panic attacks, anxiety, vertigo, post-herpetic neuralgia, hearing loss in right ear, major depressive disorder, shortness of breath,

and sleep problems. Administrative Record (AR) 22, 24, 64, 168-169. His application was denied initially and upon reconsideration. AR 114-133. He requested a hearing, which was held on January 13, 2020 before Administrative Law Judge (ALJ) Cynthia D. Rosa. AR 22, 37-61. After the ALJ found Plaintiff was not disabled, he filed a request for review which the Appeals Council denied. AR 1-6, 30. Plaintiff then appealed to the United States District Court for the Western District of Washington, which reversed and remanded the decision denying benefits for further proceedings. AR 1209-1210, 1235-1240.

Upon remand, the ALJ conducted a new hearing on November 15, 2021, after which she again found Plaintiff was not disabled during the relevant period (January 20, 2015 through March 31, 2018). AR 1149-1177. Plaintiff once again turns to this Court for review; this time of the ALJ's January 31, 2022 decision denying his claim. AR 1152-1170; *see*, 20 CFR § 416.1481.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

### III. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairments of: obesity, degenerative disc disease, left shoulder tendinopathy, and anxiety disorder. AR 1155; 20 CFR 416.1520(c).

The ALJ determined that Plaintiff had the RFC for light work, as defined in 20 CFR § 404.1567(b) except he can frequently climb ramps and stairs, but never climb ropes, ladders, and scaffolds; he can occasionally stoop, crouch, crawl, and kneel; he can do occasional overhead reaching bilaterally; he can do frequent lateral reach with the left upper extremity; he can do simple, routine, repetitive tasks with a reasoning level of one to two, no public contact and occasional contact with coworkers with no teamwork or collaborative tasks, and he can change position between sitting and standing in 30-60 minute intervals and would need a break every two hours. AR 1159.

At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's age, with his education, work experience, and RFC, remained capable of performing jobs that exist in significant numbers in the national economy such as Routing Clerk, Collator, and Agricultural Produce Sorter. AR 31; 20 CFR § 404.969.

### IV. DISCUSSION

Plaintiff argues the ALJ committed legal error by rejecting two of the medical opinions in his record without substantial evidence and by failing to find, at step two of the sequential evaluation, that Plaintiff had severe bilateral knee osteoarthritis, severe depression, and severe panic disorder. *See generally*, Dkt. 10. Plaintiff asks this Court to remand his case for an immediate award of benefit, or in the alternative, for further proceedings. *Id*.

Defendant maintains the decision denying benefits is supported by substantial evidence, free of legal error, and should be affirmed. *See generally*, Dkt. 19.

The Court turns first to Plaintiff's objections regarding the ALJ's assessment of the medical evidence.

## A. Medical Opinions

Plaintiff argues the ALJ committed legal error by failing to provide "proper explanation" for rejecting the medical opinions of Tyler Peake, PAC, and Dennis Gavin, PT. Dkt. 10 at 5.

Defendant disagrees, pointing out that both medical sources began treating Plaintiff in January 2018—only a couple months before Plaintiff's insured status expired—and rendered the opinions at issue well after the relevant period. Dkt. 19 at 5-6 (citing AR 704, 1139).

### 1. Legal Standard

The regulations regarding the evaluation of medical opinion evidence were amended for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68; *5878-79 (Jan. 18, 2017). Since Plaintiff filed her claim after that date, the revised regulations apply. *See*, 20 C.F.R. §§ 416.1520c and 416.920c.

Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical findings in the record and evaluate each opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416. 1520(c)(a) and 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

factors for a medical source's medical opinions or prior administrative medical findings in [their] . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

2. <u>Analysis</u>

   a. Tyler Peake, PAC

On a questionnaire provided by Plaintiff's attorney, Tyler Peake, PAC (Peake) opined in February 2020 that during the relevant period Plaintiff would possibly miss two days of work per month due to the "severity of his chronic knee pain [and] occasional back spasms" though he left the function-specific assessment blank writing "defer to ortho assessment", and in response to whether Plaintiff's attention and concentration and persistence and pace were impaired he wrote "defer to psych". AR 1139-1142. Peake indicated that Plaintiff's "ability to adapt or manage oneself" was mild to moderately limited, noting "inability to have gainful employment has made financial sustainability difficult". *Id*.

The ALJ rejected Peake's opinion with the following explanation:

> This is not persuasive. It is not well supported by explanation, and the offered explanation for moderate adaptation limitations cites **limited finances, not mental symptoms.** His offered social limitation is **vague**, and not well explained. Additionally, limited work attendance due to knee and back symptoms is **not consistent with the medical record for this period, which shows no treatment for a knee condition during the relevant period**, and 5/5 knee strength and normal range of motion shortly after the date last insured (10F/7, 15), as well as **generally normal lower extremity strength** (3F/2; 7F/3; 8F/13; 9F/26**), lumbar range of motion** (4F/40; 10F/15), gait (3F/2; 4F/28, 32, 73; 10F/3; 20F/3; 22F/35;

1   24F/52), **heel and toe gait** (10F/7), **sensation** (10F/7, 15), **and motor tone** (3F/2; 10F/7, 15).

AR 1165 (emphasis added).

Plaintiff argues the ALJ's reasons for rejecting Peake are legally insufficient because, in fact, Peake's opinion is supported by his longitudinal treatment notes, which Plaintiff insists Peake reviewed and adopted by stating he was "deferring" to "ortho" and "psch". Dkt. 10 at 8. As for those treatment notes, Plaintiff argues the record clearly establishes that Plaintiff experienced a severe mental impairment during the relevant period. *Id*. In addition, Plaintiff claims that "while the date is unknown, Plaintiff does have a prior history of knee arthroscopy and ACL reconstruction and meniscus repair", had some abnormal findings during the relevant period, and ultimately had a left total knee replacement a few years post-expiration date, on August 3, 2020. *Id*. at 10. Plaintiff also insists his medical records, including imaging studies, show he has "significant anatomical changes with a sacralization of Plaintiff's L5 segment, a hypoplastic disk at L5/S1, neural foraminal stenosis at the L4-L5 level impacting exiting L4 nerve root, and lesser extension of the disk into the canal at L3-L4." Dkt. 10 at 9 (citing AR 596).

Defendant maintains the ALJ's reasons for rejecting Peake are based upon substantial evidence as they are not supported by Peake's own examinations or consistent with other medical records during the relevant period, and Peake clearly attributed them to Plaintiff's financial circumstances rather than his medically determinable impairments. Dkt. 19 at 5. And even if the ALJ did error in his interpretation of the "moderate adaptations limitations" comment, Defendant insists any error is harmless because the ALJ included a moderate restriction in adapting or managing himself in Plaintiff's RFC. *Id*. at 8. (Citing AR 1158).

The Court finds the ALJ's rejection of Peake's retrospective opinion—offered almost two years after Plaintiff's insured status expired—is without error. First, Peake's opinion is unsupported by his own examinations from January 2018 and March 2018 in which Plaintiff complained of acute back pain but imaging revealed "no radiculopathy" though "narrowing of discs L4/5". AR 380. Peake ordered an MRI to rule out nerve impingement, ordered Plaintiff to engage in physical therapy (discussed below), and gave Plaintiff a Toradol injection. AR 379-386.

Second, while a doctor in Peake's practice diagnosed Plaintiff with Panic Disorder and Depression and prescribed Alprazolam to assist with panic attacks after Plaintiff committed to abstaining from alcohol abuse, that doctor's March 13, 2018 treatment note indicated that Plaintiff was "focused mostly on his financial concerns" and was frustrated with his social security attorney. AR 376. Peake appears to adopt this doctor's finding because Peake "defer[red] to psych" and then basically restated that doctor's note that "inability to have gainful employment has made financial sustainability difficult" causing mild to moderate adaptation limitations. Thus, the Court finds the ALJ's conclusion to this effect was supported by substantial evidence.

Third, Peake's opinion does not offer much in the way of a functional assessment, instead deferring to unspecified "ortho" records. To the extent Peake was referring to his own "ortho" records, the ALJ's determination that those records do not support Peake's opinion is based upon substantial evidence. The Court has reviewed them and they do not provide physical or mental functional assessments. See, AR 379-386. Thus, the Court finds no merit to Plaintiff's contention that the ALJ should have realized unspecified evidence somewhere in the record allegedly supported Peake's opinion. See, Dkt. 10 at 7-8.

Fourth, the Court finds the ALJ's conclusion that Peake's opinion is inconsistent with other medical records for the relevant period is supported by substantial evidence. The Court has reviewed the records the ALJ relied upon to draw this conclusion and finds the ALJ is correct they indicate no treatment for any knee conditions during the relevant period, and indicate 5/5 knee strength and normal range of motion shortly after the date last insured (AR 591, 599), as well as generally normal lower extremity strength (AR 366, 503, 528, 582), normal lumbar range of motion (AR 412, 599), normal gait (AR 366, 400, 404, 445, 587, 732, 799, 1109), normal heal and toe gait (AR 591), normal sensation (AR 591, 599), and normal motor tone (AR 366, 591, 599).

In sum, the Court finds the ALJ's rejection of nurse practitioner Peake's opinion is supported by substantial evidence.

b. *Dennis Gavin, PT*

In February 2019 Dennis Gavin, PT (Gavin) provided the following statement regarding Plaintiff's condition:

> David Henson has been in PT with the diagnosis of **osteoarthritis in bilateral knees**. David is having **pain and dysfunction** with activities such as pushing and pulling objects, carrying, squatting, stairs and ladder secondary to the pain in the knees. He will have 6 visits of PT for his knees starting January 3, 2019 and going to February 15, 2019. He was seen x 7 visits last year for his back pain. From 1-23-18 through 3-7-18. He continues to have **pain and decrease in function with his low back pain as well.**

AR 704 (emphasis added).

The ALJ found Gavin's opinion was not persuasive, stating:

> [I]t is partially supported by treatment records **after the claimant's date last insured**, and is **not well supported with explanation of the claimant's functional capacity**. Additionally, limitations related to the knees are not consistent with the record, which shows **no treatment for a knee condition during the relevant period**, and 5/5 knee strength and normal range of motion shortly after the date last insured (10F/7, 15).

AR 1166 (emphasis added).

Plaintiff argues that although the ALJ is correct that Gavin's opinion is, indeed, partially supported by treatment records post-dating Plaintiff's date last insured, the record indicates Plaintiff did complain about back, leg, and knee pain during the relevant period. Dkt. 10 at 13-14. Plaintiff also claims the record reflects some treatment for "chronic back pain radiating down into [Plaintiff's] bilateral thighs and across his knees" during the relevant period, as well as a "history of knee arthroscopy with ACL reconstruction and Meniscus surgery" pre-dating the relevant period. *Id*. at 14.

Defendant concurs with the ALJ that Gavin's opinion that Plaintiff had decreased functioning lacked the level of detail the ALJ requires to translate functional impairments into RFC findings, and that post-expiration records are of little value when a Plaintiff has failed to meet his burden of establishing the existence of a disabling impairment during the relevant period. Dkt. 19 at 4.

The Court finds the ALJ's rejection of Gavin's statement is supported by substantial evidence. The ALJ considered both pre and post expiration-date records, and clearly found Gavin's statement—provided almost a year after Plaintiff's insured-status expired—was "partially" supported by post-dated records, but that it was not supported by any treatment records during the relevant period. AR 1166.

To the extent the post-dated records that "partially" support Gavin's statement is of little legal consequence where a Plaintiff is unable to satisfy his burden of establishing that the condition in question was disabling on or before his date last insured. *See*, *Schalk v. Berryhill*, 734 F. App'x 475, 478 (9th Cir. 2018)(affirming the ALJ's rejection of a physician's opinion where the discounted opinion occurred fifteen months after the date last insured and did not

indicate how opined limitations would have applied in the past); *see also*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (a claimant must establish they were disabled before their insured status under the Act expires); *see also*, *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (the ALJ properly rejected a physician's retrospective assessment that "was not substantiated by medical evidence relevant to the period in question")

Moreover, an ALJ can reasonably conclude that a medical source's failure to provide any qualitative or quantitative description of Plaintiff's specific functional limitations is inadequate. *See*, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ properly rejected a physician's opinion when it did not provide "useful statements" about the degree of the claimant's limitations and failed to specify the claimant's functional limits). Thus, the Court also finds that the ALJ's finding that Gavin's statement lacked an "explanation of [Plaintiff's] functional capacity is without error.

In sum, the Court finds the ALJ's rejection of physical therapist Gavin's opinion is supported by substantial evidence.

**B.  Step Two of the Sequential Evaluation**

Plaintiff argues the ALJ erred by failing to find, at step two of the sequential evaluation, that he had "severe" depression, panic disorder, and bilateral knee osteoarthritis. Dkt. 10 at 16; AR 1155-1156.

1. <u>Legal Standard</u>

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a),

416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling 85-28)).

So long as the ALJ determines that Plaintiff had at least one "severe" impairment or combination of impairments, the sequential analysis proceeds to step three, as was the case here. AR 23-24. Notably, when the ALJ assesses the Plaintiff's residual functional capacity—defined as his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments—the ALJ must consider all of Plaintiff's impairments, including impairments he found were not severe at step two. *See*, 20 CFR §§ 404.1520(e), 404.1545; SSR 96-8p.

2. <u>Analysis</u>

Here, at step two, the ALJ determined that Plaintiff had the "severe" impairments of obesity, degenerative disc disease, left shoulder tendinopathy, and anxiety disorder. AR 1155; 20 CFR § 404.1520(c). In so finding, the ALJ considered evidence of other impairments in Plaintiff's relevant medical record, explaining:

> The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. As a threshold matter, the undersigned is **cognizant of the substantial overlap in symptomology between different mental impairments**, as well as the inherently subjective nature of mental diagnoses. Accordingly, the claimant's **psychological symptoms and their effect on the claimant's functioning have been considered together**, instead of separately, **regardless of the diagnostic label attached**.

1
2
3
4
5

>The claimant's alcohol use disorder is not a severe impairment. The claimant endorsed regular alcohol use in 2015 and 2016, with 10 months of sobriety in 2016, and maintained sobriety after a detoxification program in October 2017. 6F/3; 12F/48. The record does not establish that the claimant's alcohol use more than minimally impacted the claimant's ability to perform basic work activities, as his mental symptoms have continued despite sobriety. Regardless, **the claimant's mental symptoms have been considered as symptoms of his severe anxiety disorder below, regardless of their precise diagnostic origin**.

6
7
8
9

>The claimant's osteoarthritis of the knees was not a severe impairment during the relevant period, and **the record does not show any treatment for knee arthritis during the relevant period**. On exam in May 2018, shortly after the date last insured, the claimant had 5/5 knee extension bilaterally. 10F/7. His active and passive range motion of the knees was normal. 10F/15. **The record does not establish that this impairment more than minimally impacted the claimant's ability to perform basic work activities during the relevant period.** Therefore, it is not severe.

10  AR 1155-1156 (emphasis added).

11  Plaintiff argues the ALJ "appears to have improperly rejected Plaintiff's depression
12  and panic disorder as non-severe impairments due to a lack of evidence and treatment" as the
13  ALJ "did not even mention these impairments at all in the evaluation." Dkt. 10 at 16; AR 1155-
14  1156. However, according to Plaintiff, the record does, in fact, reflect "mental health treatment
15  and consistent symptomology" *Id*. (citing AR 373-447, 635-684). In addition, Plaintiff claims
16  "the record clearly establishes severe impairments of bilateral knee osteoarthritis". *Id*.

17  Defendant responds that Plaintiff's "step two" argument is "immaterial" because step two
18  of the sequential evaluations is simply a "de minimis screening device to dispose of groundless
19  claims" and the ALJ did not dispose of Plaintiff's claim at step two. Dkt. 19 at 10 (citing *Smolen*
20  *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154
21  (1987)). Instead, Defendant contends the ALJ proceeded past step two and considered all
22  functional limitations established by the evidence, irrespective of how they were classified, as
23  required by the regulations. *Id*. at 10-11 (citing 20 C.F.R. § 404.1545(a)(2)).

24

The Court concurs with Defendant. Although Plaintiff is correct that the ALJ did not use the terms "depression" and "panic disorder" in her opinion, the ALJ plainly stated that she considered all of Plaintiff's "psychological symptoms and their effect on [his] functioning … together, instead of separately, regardless of the diagnostic label attached." AR 1155. Notably, the ALJ accommodated for Plaintiff's severe anxiety disorder by including in Plaintiff's RFC the limitation to simple, routine, repetitive tasks with a reasoning level of one to two, no public contact, and only occasional contact with coworkers with no teamwork or collaborative tasks. AR 1159.

As discussed above regarding the medical opinion of Gavin, the ALJ found that medical evidence from the relevant period did not establish that Plaintiff had severe bilateral knee osteoarthritis during that time, meaning his knees did not cause more than a minimal impact on his ability to perform basic work activities. AR 1155-1156; *see also*, *Yuckert,* 841 F.2d at 306. Nevertheless, in assessing Plaintiff's RFC the ALJ included related limitations such as a prohibition on climbing ropes, ladders, and scaffolds, and only occasional stooping, crouching, crawling, and kneeling. AR 1159.

In sum, the Court finds the ALJ properly considered all of Plaintiff's functional limitations established by the evidence, and therefore did not err at step two of the sequential evaluation.

## V. CONCLUSION

For the foregoing reasons this matter is AFFIRMED.

Dated this 1st day of May, 2023.

*[signature]*

David W. Christel
Chief United States Magistrate Judge